## UNITED STATES v. MORSS.
### No. 4195.

Circuit Court of Appeals, First Circuit.

Jan. 14, 1947.

Melva M. Graney, Sp. Asst. to Atty. Gen. (Douglas W. McGregor, Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., of counsel), for appellant.

Phillips Ketchum, of Boston, Mass. (Harold L. Clark, of Boston, Mass., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Everett Morss brought this complaint for recovery of income taxes alleged to have been illegally collected for the calendar years 1939, 1940 and 1941. The court below gave judgment for the taxpayer, having rejected a contention by the government that the income of certain trusts was taxable to the grantor under § 22(a) of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 22(a), as applied in Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, 64 F.Supp. 996. The correctness of this ruling is the only question presented to us on appeal. It is not now claimed that the grantor was taxable either under § 166 or § 167 of the Code.

Since, in the application of the Clifford doctrine, "no one fact is normally decisive" (309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788), it is not surprising that that case has given rise to a considerable volume of litigation. Courts have felt their way from case to case, drawing distinctions and invoking analogies, in an effort to give concreteness to the general proposition that a grantor of a trust remains taxable on the trust income under § 22(a) where the benefits directly or indirectly retained by him blend imperceptibly "with the normal concepts of full ownership." In this process of case-law development, courts are apt by insensible degrees to be led to conclusions incompatible with the statutory framework. The corrective of this, in the particular matter before us, is to get back to the provisions of the Internal Revenue Code itself, to

see whether a proposed conclusion as to taxability of the grantor comports with the statutory scheme.

The Code has a group of sections (§§ 161–169) dealing quite comprehensively with the income taxation of trusts and estates. Generally, that is, "except as provided in section 166 * * * and section 167 * * *," trust income currently distributable to beneficiaries is taxable to the respective recipients, and the balance of the net income of the trust is taxable to the trustee in his fiduciary capacity. In this respect, the Code makes no different provision for the case where the grantor is trustee or one of the trustees; nor has anything been made to turn upon whether the fiduciary powers of the trustee have been conferred in broad or narrow terms. However, Congress has concerned itself with the imposition of specific limits upon the possibility of reducing surtaxes by the creation of trusts. In cases falling within § 166 (relating to revocable trusts) or § 167 (relating to income for benefit of the grantor), the trust income is taxable to the grantor. Both of these sections have been strengthened and expanded by successive amendments.

A significant indication of legislative intent may be derived from § 167(c), a subsection added to the Internal Revenue Code by § 134(a) of the Revenue Act of 1943, 58 Stat. 51, and applicable retroactively upon the filing with the Commissioner of the signed consents prescribed by § 134(b) (2), 26 U.S.C.A.Int.Rev.Acts, page 458 (which was done in the case at bar). Section 167(c) reads, in part, as follows:

"(c) Income of a trust shall not be considered taxable to the grantor under subsection (a) or any other provision of this chapter merely because such income, in the discretion of another person, the trustee, or the grantor acting as trustee or cotrustee, may be applied or distributed for the support or maintenance of a beneficiary whom the grantor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed."

From this, as well as from the other sections of the Code, it is evident that Congress has chosen not to make the family the taxable unit; that it has chosen to permit a taxpayer to minimize his surtaxes by making gifts of income-producing property to others, including members of his family; that such gifts need not be outright but, with stated qualifications, may take the form of a transfer in trust for the benefit of a member of the family circle, with "the grantor acting as trustee"; that even where the trust income may, in the discretion of the grantor-trustee, be applied to the support of a member of the family whom the grantor is legally obliged to support, this circumstance alone shall not render the income taxable to the grantor under § 167 *"or any other provision"* of the Code [i.e., § 22(a)], "except to the extent that such income is so applied." These are choices of policy within the legislative province.

As an original question it might have been supposed that, in the case of any trust recognizable and enforceable by a court of equity, the trust income would not be taxable to the grantor except to the extent as specifically provided in §§ 166 and 167. But Helvering v. Clifford, supra, makes clear that this proposition is subject to a qualification: Even where the case does not fall within the technical limits of § 166 or § 167, the broad sweep of § 22(a), defining gross income, renders the trust income taxable to the grantor where the benefits directly or indirectly retained by him coincide substantially "with the normal concepts of full ownership." However, in view of the statutory scheme as a whole, and of the careful language of the Supreme Court in Helvering v. Clifford, it would seem that the court meant to limit the application of the Clifford doctrine to rather exceptional and extreme cases.

With these introductory observations, we come to the facts of the instant case.

During the entire calendar years 1939, 1940 and 1941, the taxpayer was married and living with his wife and four minor children in Brookline, Massachusetts.

In December, 1936, the taxpayer had created three trusts, and in March, 1937, a fourth trust, one for each of the children, the oldest of whom at that time was seven and a half years of age. The four trust

instruments were in identical terms, except as to the date of creation and the identity of the beneficiary. In each instrument Mr. Morss declared himself trustee of shares of stock of the Simplex Wire & Cable Company, reserving the right to appoint his wife as co-trustee and to name successor trustees. During the years now in question, Morss and his wife were the trustees. The trusts were declared to be "irrevocable."

The Simplex Wire & Cable Company is a Massachusetts corporation whose authorized and outstanding capital stock consists of 120,000 shares of common, each without par value. During the years in question, the taxpayer was president and treasurer and a stockholder and director of the corporation. The capital stock is held in approximately equal thirds by or for three branches of the Morss family, including spouses, the three branches stemming from three brothers, all of whom are now dead, and each of whom has left issue surviving. The father of the taxpayer was one of those three brothers. The taxpayer has a brother and a sister, each of whom, in his or her immediate family, has about the same interest as the taxpayer and his immediate family in the shares of the corporation. During the years now in question 13,334 shares of the company's stock (about one ninth of the total) were held by or for the benefit of the taxpayer, his wife, and his four children, including the shares conveyed by the taxpayer to the four trusts aforesaid. Control of the corporation thus did not vest in the immediate family group of the taxpayer during the taxable years involved herein, though the control thereof during such period did vest and is still vested in the Morss family as stated above.

In each trust instrument the trustees are directed to accumulate all the net income of the trust property, and add the same to the principal until the beneficiary shall be 21 years old. Thereafter, until the beneficiary shall be 25 years old, the trustees are directed to pay to the beneficiary or in their uncontrolled discretion to apply for his education, maintenance or benefit, all or such part of the net income as the trustees in their uncontrolled discretion may determine; the balance of the net income not so distributed to be added to the principal. When the beneficiary shall be 25 years old, the trustees are to distribute to him one third of the principal then held and shall thereafter pay to him all the net income of the remaining trust property until he shall be 30 years old. When the beneficiary reaches 30, the trustees are directed to distribute to him one half of the remaining principal and thereafter to pay to him all the net income until he shall be 35 years old, whereupon the trustees are directed to distribute to him all the property remaining in the trust. If the beneficiary shall die before reaching the age of 35, "then all the remaining trust property shall be distributed to his estate." Each trust contains a spendthrift clause.

In the fourth paragraph of each trust instrument it is provided that, notwithstanding anything thereinbefore contained, "the Trustees, other than myself, Everett Morss, Jr., may in their uncontrolled discretion at any time or times during the life" of the beneficiary pay to the beneficiary, or apply for his benefit, from the principal of the trust property "such sum or sums as the Trustees may in their discretion determine to be appropriate for his comfort, education or support, but the Trustees shall not make such payment if they believe other funds should be used to meet such expenses." It is stipulated that during the taxable years "no part of the income or principal of the aforesaid trusts was paid to or applied for the education, maintenance, or benefit of the respective beneficiaries of the trusts by the trustees, nor was any part of the net income or corpus of the trusts otherwise paid out or distributed by the trustees, except amounts necessary to defray expenses and taxes of the trusts."

In the seventh paragraph of each trust instrument powers of management are conferred upon the trustees in broad terms. This paragraph is set forth in full in the footnote.* The only powers which the taxpayer reserved in his capacity as grantor

---

* "Seventh: In addition to any and all powers otherwise conferred on the Trustees hereunder or by law and without in any way intending to limit the same, the

were the powers to appoint his wife co-trustee and to name successor trustees. The powers of management, extensive as they are, vest in the taxpayer only in his capacity as trustee, and for so long as he may remain a trustee. Upon familiar principles they will be construed to be fiduciary powers, which must be exercised in good

Trustees shall have the following powers to be exercised by them in their absolute and uncontrolled discretion.

"(a) Power to sell or lease for any term whether or not longer than the term of the trust, any and all of the property constituting the trust fund whether real or personal, at public auction or private sale, without the necessity of applying to any court for leave to do so, and to execute and deliver all instruments of transfer which may legally be necessary or proper therefor, no person paying money to the Trustees to be bound to see to the application of the money so paid. Any such sale or lease may be made to any trustee hereunder or to any relative or husband or wife of any trustee hereunder without any other or greater liability upon the Trustees, the vendee or lessee, than would exist if any such sale or lease were made to an entirely unrelated person.

"(b) Power to invest and reinvest from time to time any money or property in such manner and at such time as may be deemed expedient, and to purchase at any time or hold any securities or property of any kind, even though the same be unproductive of income or be of a kind not usually considered suitable for trustees to select or hold in the absence of express authority, and to purchase at any time or hold a larger proportion in any one investment than trustees should ordinarily purchase or hold in the absence of express authority including power to purchase or hold securities or property which, excepting for the provisions of this paragraph would be considered unsuitable for two or more of the above reasons.

"(c) Power to sell or transfer any securities or property constituting the trust fund to any corporation, partnership or association in exchange for all or any part of the stock, bonds, notes, shares or certificates of beneficial interest of such corporation, partnership, or association, and to become party to or under plans of reorganization or consolidation of any one or more corporations or other enterprises in which the trust fund or any portion of it may be invested and to buy or sell and/or exercise rights of subscription to stock or other securities of any corporation, partnership, or association; and power to do any one or more of these acts, whether or not either or both of the Trustees are or may be interested as officers, stockholders, partners or otherwise in any such corporation, partnership or association.

"(d) Power to vote in person or by proxy upon any stock or shares for any purpose whatsoever, including the purpose of electing either or both of the Trustees, or the beneficiary herein named, to any office or offices in any corporation, partnership or association.

"(e) Power to borrow money and to mortgage or pledge all or any part of the securities and property constituting the trust fund to secure payment of any such loan or loans, and such borrowing with or without such security may be made from any trustee hereunder or any relative or husband or wife of any trustee hereunder with the same effect as if such borrowing were from an entirely unrelated person.

"(f) Power to lend money with or without security upon such terms and to any such corporations, partnerships, or associations as the Trustees may see fit, and whether or not both of the Trustees are or may be interested therein as officers, stockholders, partners, or otherwise, and to any such individual or individuals as the Trustees may see fit including any person with whom either or both of said trustees may be associated as partner or otherwise, but not including the beneficiary herein named.

"(g) Power to enter into any and all contracts, guarantees, and obligations which in the opinion of the Trustees may be expedient and power to deal with the trust fund and to manage, control, and conduct the affairs of the trust as fully and as freely as if the Trustees were the absolute owners of the securities and property constituting said fund.

"(h) Power to determine what is principal and what is income and what expenses shall be charged to principal and what expenses shall be charged to income, whether or not in the absence of this authority the decision of the Trustees would be in accordance with the law; and power as to any investments at any time acquired or held, the cost or actual value of which is above their par value, or which are for any reason wasting or diminishing investments, to treat the entire increment or any part thereof as the Trustees may see fit as income without any obligation to provide by sinking fund or otherwise for a diminution in the actual value, but they may in their discretion treat all or any part of such increment as principal.

"(i) Power to keep any or all securities or other property in the name of some person or persons other than the Trustees or

faith for the best interests of the trusts and of the beneficiaries therein, rather than for the benefit or aggrandizement of the trustee personally. Hall v. Commissioner, 10 Cir., 1945, 150 F.2d 304, 307, 308; Cushman v. Commissioner, 2 Cir., 1946, 153 F.2d 510, 514; American Law Institute, Restatement of Trusts, § 170 and comment s. Considering the circumstances of this particular trust, it is not difficult to imagine situations in which exercise of the various broad powers might well be advantageous to the trust.

■ The present are not "short term trusts" like the trust in the Clifford case, where the corpus was to revert after a brief period of years to the grantor, there being meanwhile "at best a temporary reallocation of income" within the family group. Here the only possibility of the grantor's regaining any beneficial interest in the corpus is as one of the next of kin in the event that the child beneficiary should die intestate before reaching the age of 35, the grantor surviving him. Nor is the case at bar like Commissioner v. Buck, 2 Cir., 1941, 120 F.2d 775, 777, where the grantor retained the power to direct the trustee in the details of management of the trust corpus, coupled with "the power, until his death, freely to sprinkle the income about among any beneficiaries he may select (as if he were playing a hose)." Here there is only a current power in the wife as co-trustee, not in the taxpayer, to apply trust income or principal to the comfort, education or support of the named beneficiary (whom the grantor is under a legal duty to support), but not if she should believe that "other funds should be used to meet such expenses." As previously stated, even if this power had been lodged directly in "the grantor acting as trustee," § 167(c) provides that this circumstance alone shall not render the trust income taxable to the grantor, where, as in the case at bar, no such application was in fact made during the taxable years.

In setting up the trusts, the grantor gave away the beneficial interest in the income-producing property. Having in mind "the normal concepts of full ownership," we do not see how it could be said here that what the grantor gave away was "insignificant" and that he remained in substance the owner of the corpus. The basis for attributing the trust income to the grantor under § 22(a) is therefore absent. To test this proposition, let us suppose that the taxpayer's father had established these trusts, designating the taxpayer as trustee, and that all the other terms of the trusts were as in the case at bar. We think the taxpayer would then be recognized as merely the holder of the legal title in trust, and that no one would suggest that for tax purposes he should be regarded as the "full owner." The only difference between the supposed case and the case now before us is that in the case at bar the income is being dealt with year by year in accordance with the taxpayer's own determination back in 1936. But that does not constitute the taxable realization of economic gain; for if it did, it would result even in taxing "to a father the income of a simple trust with a disinterested trustee for the benefit of his adult child"—which of course is not done. Helvering v. Stuart, 1942, 317 U.S. 154, 168, 63 S.Ct. 140, 147, 87 L.Ed. 154.

■ The case at bar falls within the language of our opinion in Commissioner v. Branch, 1 Cir., 1940, 114 F.2d 985, 987, 132 A.L.R. 839: "Where the grantor has stripped himself of all command over the income for an indefinite period, and in all probability, under the terms of the trust instrument, will never regain beneficial ownership of the corpus, there seems to be no statutory basis for treating the income as that of the grantor under Section 22(a) merely because he has made himself trustee with broad power in that capacity to manage the trust estate." Accord: Helvering v. Palmer, 2 Cir., 1940, 115 F.2d 368; Jones v. Norris, 10 Cir., 1941, 122 F.2d 6, 10; Armstrong v. Commissioner, 10 Cir., 1944, 143 F.2d 700, 703.

The judgment of the District Court is affirmed.

---

in the name of a partnership or corporation or in the name of the Trustees or of either of them without disclosure of fiduciary capacity.

"(j) Power to accept from any person additional property to be held in trust under this instrument."