**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Franklin A. REECE, Respondent.**

**No. 5091.**

United States Court of Appeals First Circuit.

Heard April 3, 1956.

Decided May 3, 1956.

Walter R. Gelles, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Acting Asst. Atty. Gen., and Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., were on brief, for petitioner.

Andrew C. Bailey, Boston, Mass., with whom Powers & Hall, Boston, Mass., was on brief, for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The Commissioner asks us to review a decision of the Tax Court entered August 10, 1955, concluding that there is no deficiency in the income tax of Franklin A. Reece for the calendar year 1947. In determining a deficiency, the Commissioner had ruled that certain "royalty" income paid to the taxpayer's wife pursuant to an assignment must be attributed to the taxpayer and included in his gross income for the year 1947. The Tax Court held otherwise. We think the Tax Court was right.

There are no facts in dispute. In 1928 the taxpayer invented a "helical traverse double grooved roll to be used in winding machines." Universal Winding Company became interested in the invention and submitted to Reece an offer to purchase it. Reece accepted the offer, and on February 20, 1929, executed an assignment to Universal Winding Co. of his invention and any patent or patent application thereon. The Patent Office was notified of the assignment, and on March 4, 1930, issued a patent on the device to Universal Winding Co. as assignee of the inventor Reece.

The taxpayer was at no time an employee of Universal Winding Co.

Under the terms of the agreement for the purchase of the invention, Reece was to receive, and did receive at once, a payment of $2,500, "to cover the time and expenses incurred by" Reece with reference to the invention. In addition, Universal Winding Co. agreed to pay Reece a so-called "royalty" "for each and every winding spindle that we sell covered by your invention." When the patent was issued in 1930, Universal

Winding Co. paid Reece $7,500 as advance "royalty" in accordance with the agreement of sale; and presumably the Company continued to make the agreed payments to Reece thereafter up until December 26, 1935.

On the latter date the taxpayer by written instrument made an assignment to his wife of all his interest under the contract with Universal Winding Co., which assignment was "accepted" by the debtor. This assignment was as follows:

"Know All Men By These Presents:

"That I, Franklin A. Reece, of Chestnut Hill, Massachusetts, in consideration of love and affection, hereby assign and transfer to my wife, Marie Teresa Reece, her executors, administrators and assigns, my royalty contract with the Universal Winding Company as set forth in its letter to me dated February 5, 1929, covering my invention, together with all my right, title and interest in and to payments now due or hereafter to become payable to me by said Company thereunder; the said contract to be held by my said wife for her own use and behoof as fully and entirely as the same would have been held by me had this assignment not been made.

"Executed this 26 day of December, 1935.

"(s) Franklin A. Reece (S)
"In the presence of:
"(s) J. W. Nichols
"Universal Winding Company hereby consents and agrees to the above assignment and acknowledges receipt of notice thereof, this * * day of December, 1935.

"Universal Winding Company
"By (s) Robert A. Leeson
"President"

Since the assignment to Mrs. Reece was without consideration and constituted a gift, the taxpayer on March 6, 1936, filed a federal gift tax return with respect thereto and paid a federal gift tax thereon.

Thereafter, Universal Winding Co. paid directly to Mrs. Reece the "royalty" payments due under its contract with Reece, such payments in the tax year now in question, 1947, amounting to the sum of $13,259.55. These payments to the wife, as the Tax Court correctly found, "were made for her sole use and benefit and were not subject to any control" by the taxpayer. The Tax Court concluded that this payment of $13,259.-55 in 1947 was income to the wife, not income to the taxpayer.

The case would have been quite different if the gratuitous "assignment" of December 26, 1935, had been no more than a revocable power of attorney authorizing the wife to collect the "royalty" payments due from the debtor. Then, by virtue of the reserved power of revocation, the taxpayer would have remained "in command" of the income, and if by nonexercise of this power he chose to allow his wife to make the collections in 1947, the payments to the wife in that year would clearly have been income attributable to the taxpayer and taxable as such. Cf. Corliss v. Bowers, 1930, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916.

But the parties are in agreement here that the assignment of December 26, 1935, was an absolute and irrevocable assignment. We suppose this concession by the Commissioner was due to the fact that the formal assent by the debtor to the assignment amounted to a novation, whereunder the obligation to make the "royalty" payments to the taxpayer was extinguished and in lieu thereof was substituted a new direct obligation to make the agreed payments to the wife. See Williston, Contracts § 438A (rev. ed. 1936); Am.L.Inst., Rest. Contracts § 158(2) (c) (1932). At any rate, as the Tax Court said: "The validity of the assignment was not questioned."

■ Of course, the result of the Tax Court's decision is that the taxpayer has succeeded, by virtue of the assignment to his wife, in minimizing his own sur-

tax for the year 1947. The Commissioner, as guardian of the revenue, does not like that result. Though no doubt a husband can make a valid gift to his wife, transactions between a husband and wife in the tax field are naturally subject to special scrutiny by the courts, to determine whether the transaction is genuinely what it purports to be. But once the genuineness of the transaction is ascertained, as is here conceded, the tax consequences are the same (so far as the tax year 1947 is concerned, before joint returns were permitted), whether the transfer is made to the wife or to a person not within the family group. In the case at the bar, counsel for Commissioner admitted to us that the arguments advanced in support of the government's position were equally applicable had the assignment of December 26, 1935, been made to some outsider. The fact that the "absolute assignment" was made here to the wife affords only a coloration to the case which we may properly disregard.

Under the sweeping definition of "gross income" found in § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), the Commissioner has persuaded the courts, in a notable series of cases, that notwithstanding the fact that income has in fact been paid to a donee pursuant to some form of transfer or assignment executed by the taxpayer, nevertheless such income should still, for tax purposes, be attributable to the donor and taxable as his income. Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. We discussed these cases in Commissioner of Internal Revenue v. Bateman, 1 Cir., 1942, 127 F.2d 266, and had some difficulty in formulating their exact point of decision. We observed that the Supreme Court in the Schaffner case had grouped together the Earl, Horst, Eubank, Clifford, and Schaffner cases under a unified formula, to the effect that "one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid." 312 U.S. at page 582, 61 S.Ct. at page 761. Commenting on this unified formula, we went on to say, 127 F.2d at pages 272–273:

"However, in Lucas v. Earl the taxpayer had command of the income during the taxable year, because he might have refrained from performing the services for which the compensation was to be paid. In the Horst case the owner of the bond had command over the income during the taxable year and in the same year procured its payment to his son by transfer to him of the negotiable coupons. But in the Eubank case the taxpayer did not have command of the income during the taxable year because his services had been completed in the past and he had many years before transferred to an assignee all his right, title and interest in the agency contract under which the renewal commissions were payable. In the Clifford case the taxpayer had command of the trust income during the taxable years only in the sense that he had discretion as trustee to pay the income currently to his wife or to accumulate it for ultimate distribution to her at the end of the short term trust. In the Schaffner case the taxpayer during the taxable year had no command over the assigned income; however much he might have repented of the assignment made the previous year, the income nevertheless had to go to his assignee. * * *

"But it seems that the formula above quoted from the Schaffner case cannot be taken literally. In a literal sense it might be read to

mean that one presently owning property and thus 'vested with the right to receive income' therefrom is ever thereafter subject to a tax on such income, regardless of any transfer, in trust or otherwise, 'by which he procures payment of it to another' in succeeding years. True, the income may in the subsequent years go as the transferor once willed it to go. That would be equally true if the former owner had made an outright gift to a favored donee. Whether the transferor in the subsequent years experiences any 'satisfaction' from this application of the income will depend a good deal upon his then state of mind. That the Supreme Court meant to lay down no such revolutionary proposition is evident from its reaffirmation in the Schaffner case of its unanimous decision three years earlier in Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, where the life beneficiary under a trust assigned to one of his children an interest amounting to $9,000 in each calendar year thereafter out of the net income which the beneficiary was then or might thereafter be entitled to receive during his lifetime; the court construed the assignment as a transfer *in praesenti* to the donee of a life interest in the trust corpus and held in consequence that the income thereafter paid to the donee was taxable to him and not the donor."

In United States v. Morss, 1 Cir., 1947, 159 F.2d 142, we perhaps implied that the Commissioner had persuaded the courts to go too far, under the guise of statutory interpretation, in thwarting efforts by taxpayers to minimize their surtax. At any rate, this court has not hesitated to sustain such efforts, where we were satisfied that the statute, as the Congress chose to write it, permitted just that. See Commissioner of Internal Revenue v. Branch, 1 Cir., 1940, 114 F.2d 985, 132 A.L.R. 839; Commissioner of Internal Revenue v. Bateman, 1 Cir., 1942, 127 F.2d 266; United States v. Morss, 1 Cir., 1947, 159 F.2d 142.

And where, as in this case, we are not squarely controlled by a ruling of the Supreme Court, we think we ought to get back to the provisions of the Internal Revenue Code itself to see whether arguments advanced by the Commissioner to demonstrate the continued taxability of an assignor comport with the statutory scheme.

■ It is significant that in all the years since 1916 the Congress has chosen not to make the family income the taxable unit, but has chosen, rather, to permit a taxpayer to minimize his surtax by making gifts of income-producing property to others, including members of his family. We repeat what was said in Commissioner of Internal Revenue v. Bateman, supra, 127 F.2d at page 275: "The courts under the guise of statutory interpretation cannot carry the whole burden of 'plugging up the holes'."

■ In this case Reece was originally the owner of a patentable invention. This capital asset had merely the potentiality of producing income, that is, if the invention were profitably exploited. But he sold his patent rights to Universal Winding Co. in 1929 and thereby received in substitution a new kind of property interest, a chose in action, a contract right to receive "royalty" payments in the future, under the conditions specified in the contract of sale. No doubt this contract right to receive future income payments was property of the taxpayer which, if he still held it at the date of his death, would have to be reported at its fair valuation as a part of the decedent's gross estate. See McClennen v. Commissioner, 1 Cir., 1942, 131 F.2d 165, 169, 144 A.L.R. 1127. But this taxpayer, having conveyed away his patent rights in 1929, divested himself of his substituted contract right by the "absolute assignment" thereof to his wife in 1935. After that he retained nothing whatever which could be said to be the source, directly or indirectly, of

the income payments made in 1947. How can it be said that the payment by Universal Winding Co. to Mrs. Reece of $13,259.55 in 1947, income which since December 26, 1935, he had no power to command, constituted 1947 income to the taxpayer within the meaning of §§ 11, 12, and 22(a), 26 U.S.C.A. §§ 11, 12, 22 (a)? That is what the Commissioner has to maintain, in order to win this case. Take a slight variation of the facts: Suppose the taxpayer had assigned his patent right to his wife in 1929, and that the wife, having procured the issuance of the patent to herself as assignee, had then sold the patent right to Universal Winding Co. in exchange for a promise by Universal Winding Co. to pay the purchase price in the form of future "royalty" payments. Surely, the government would concede that the payments under such contract in 1947 would constitute income to the wife, not to her husband. How is the case then any different if the taxpayer denudes himself of all interest in the subject matter, in 1929 and 1935, in the manner adopted in the principal case? The only difference is that whereas under the present facts the government presumably had the benefit from 1929 to the end of 1935 of taxing the payments from the Universal Winding Co. contract as part of Reece's income, yet under the slightly varied facts, in the case supposed, none of the payments made by Universal Winding Co. under its contract would have been taxable as income to Reece. This difference hardly strengthens the government's case, for it is a difference which is explicable solely by the fact that the outright gift to the wife was in the present case made after, instead of before, Universal Winding Co. bought the patent and agreed to pay "royalties" in consideration therefor.

Under §§ 11 and 12 of the Code, the tax is laid for each taxable year upon the net income "of every individual." The term "net income" is defined in § 21(a) to mean "the gross income computed under section 22, less the deductions allowed by section 23." Section 22 (a) contains the familiar broad general definition of "gross income." In Helvering v. Eubank, 1940, 311 U.S. 122, 61 S. Ct. 149, 85 L.Ed. 81, the taxpayer, long before the taxable year, had given away by assignment all that he had, that is, a contract right to receive deferred compensation for past services in selling insurance. Yet the income was held taxable to the assignor. Cases like this must rest upon the narrow ground that, under the interpretation which the Supreme Court in Lucas v. Earl, 1930, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, put upon the language of § 22(a) that "gross income" includes "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid," such income is always taxable to the person who earned the compensation for personal service, and the tax cannot be deflected from such earner to another by means of an assignment, whether before or within the taxable year. See Blair v. Commissioner, 1937, 300 U.S. 5, 11, 57 S.Ct. 330, 81 L.Ed. 465.

The income in the case at bar is admittedly not income "derived from salaries, wages, or compensation for personal service," for Reece never was in the employ of Universal Winding Co. Therefore, the holding in Helvering v. Eubank does not apply. In cases of income derived from property, we must accept, in deference to Harrison v. Schaffner, 1941, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, that where the taxpayer retains the "tree" and purports merely to assign the "fruits" thereof, the fruits remain thereafter, and not only in the year in which the assignment was made, taxable as income of the assignor, on the metaphorical concept that the assignment fails to minimize the assignor's taxable income because it is a futile attempt to attribute the fruits "to a different tree from that on which they grew." Lucas v. Earl, 1930, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731. In cases like Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 557, 84 L.Ed. 788, the question is whether the benefits directly or indirectly re-

tained by the assignor blend imperceptibly "with the normal concepts of full ownership", so that it is reasonable to conclude that the assignor remains "in substance" the owner of the corpus—the "tree"—and therefore that the income therefrom may fairly be attributable to the assignor. Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, was easy, for there the taxpayer not only retained ownership of the "tree," that is, the negotiable bond, but he also had command of the income therefrom in the very taxable year, and he procured the payment of such income to his favored donee in that year by delivering to the donee as a gift the detached negotiable interest coupon. This case obviously has no bearing on the case at bar.

Also it is clear that the present case is not ruled by Helvering v. Clifford, supra, and its progeny, nor by Harrison v. Schaffner, supra, for as above stated the taxpayer after the assignment of December 26, 1935, retained absolutely nothing relating to the subject matter—not the "tree," nor anything which could be said to blend imperceptibly "with the normal concepts of full ownership." Since the assignment to Mrs. Reece was not of "salaries, wages, or compensation for personal service" earned by the taxpayer, the issue is as stated by the Supreme Court in Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 604, 68 S.Ct. 715, 722, 92 L.Ed. 898: "The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes." The same thing was recognized in substance in Harrison v. Schaffner, supra, 312 U. S. at page 583, 61 S.Ct. at page 762, in which case the Court left it "to future judicial decisions to determine precisely where the line shall be drawn between gifts of income-producing property and *gifts of income from property of which the donor remains the owner, for all substantial and practical purposes.* Cf. Hel-

vering **v. Clifford, supra."** [Italics added.]

Our conclusion is that it is impossible to read §§ 11, 12, 21(a), and 22(a) of the Code as meaning that Congress intended to tax as 1947 income of this "individual" taxpayer the payments received during that year by Mrs. Reece from Universal Winding Co. pursuant to the taxpayer's "absolute assignment" to her in 1935 of all his rights under his contract of 1929 with the Universal Winding Co. As square authority for this conclusion we may cite Nelson v. Ferguson, 3 Cir., 1932, 56 F.2d 121, certiorari denied 1932, 286 U.S. 565, 52 S. Ct. 646, 76 L.Ed. 1297, a case very similar on its facts, and one which, though it was decided before the Supreme Court passed down the Clifford, Horst, Eubank, and Schaffner cases, is in no way affected by the decisions in those cases, for the reasons above indicated.

The decision of the Tax Court is affirmed.