OPINION. Pierce, Judge: Notwitstanding the numerous and complicated facts here presented, which are necessary to show the nature of the various claims and controversies settled with Avco Manufacturing Corporation in the agreement of May 1, 1951, .the issue for decision is relatively simple. It is: Did petitioner Anne B. Scott, by her participation in said settlement agreement, sell or exchange any interest in a patent, or any interest in the contract right, which she had acquired by assignment from her husband, to receive “royalty” payments under the Laundri-Matic license agreement of 1935? The answer to this question will determine whether the payments which she received from Avco subsequent to such settlement qualify as “long-term capital gain,” within the meaning of section 117 of the Internal Revenue Code (1939).[2] It is our opinion that this question should be answered in the negative. We have concluded from an examination of all the evidence, that Anne B. Scott, immediately prior to the settlement agreement of May 1, 1951, did not have either title or a proprietary interest in any patent, but only a contract right to receive 12 per cent of such “royalty” payments as might thereafter accrue and be paid under a certain intercorporate patent license agreement; and that she did not, by said settlement, sell or exchange any interest in a patent, or any interest in her contract right to receive such “royalty” payments. The situation, in brief, is this: Don O. Scott, in the year 1936, sold, assigned, and surrendered to the Laundri-Matic Corporation, all of his 12 shares of stock in that corporation; and he received, in substitution, a new kind of property interest — a chose in action, a contract right to receive 12 per cent of such “royalty” payments as might thereafter accrue and be paid, under a certain intercorporate patent license agreement (called the Laundri-Matic agreement of April 23, 1935), for the manufacture and sale of domestic washing machines. The instrument of transfer to Don O. Scott, which is set forth in our Findings of Fact, shows the nature of the interest which he so acquired, to wit: “* * * twelve per cent (12%) of all royalties accruing or paid after the date hereof, by Hydraulic Brake Company under and pursuant to the license agreement between The Laundri-Matic Corporation and Hydraulic Brake Company, dated April 23, 1935 * * *.” The instrument did not assign or transfer any title or proprietary interest in any patent or patent application. And after it was delivered, Laundri-Matic continued its corporate existence, without Don O. Scott being a stockholder thereof. On November 1,1940, Don O. Scott transferred to his wife, Anne B. Scott, by gift, all of his said contract right to receive “royalty” pay-mente. In the meantime, the obligation of Hydraulic to make such payments had been assumed by Bendix Home Appliances, Inc.; and later it was assumed by Avco Manufacturing Corporation which had become the exclusive licensee of all patents covered by said Laundri-Matic agreement. The contract right to receive “royalty” payments, which Anne B. Scott thus acquired by assignment, was income-producing property. Franklin A. Reece, 24 T. C. 187, affd. (C. A. 1) 233 F. 2d 30. So long as she retained it and received the payments which flowed therefrom, these payments were taxable to her as ordinary income; because they were not the proceeds of any sale or exchange which she had made in acquiring the contract right, and there is no contention or evidence that any portion of the payments represented a return of capital. Cf. Lewis N. Cotlow, 22 T. C. 1019, affd. (C. A. 2) 228 F. 2d 186; Joseph A. Guthrie, 42 B. T. A. 696. Whether such payments would have been taxable in like maimer to her predecessors in interest, who had acquired their rights under other circumstances, is a question that is not before us. On about May 1,1951, Anne B. Scott, together with 17 other individuals and 2 corporations, entered into an agreement with Avco Manufacturing Corporation, under which they compromised and settled various lawsuits and controversies respecting royalty payments to be made by Avco under its existing license agreements. The controversies reflected a three-way dispute between Avco and two adverse groups of royalty claimants. The effect of the settlement was that, (1) the rate of royalty to be paid by Avco on certain machines, for both past and future years, was compromised and finally determined ; (2) the identity of the persons who would receive the royalties was determined by an agreement, that the royalties in dispute would be split equally between the two adverse groups of claimants, while certain undisputed royalties would continue to be paid only to the Laundri-Matic Participants; and (3) each of the parties to the settlement would release and discharge the others from all preexisting claims. In such settlement, Avco did not purchase or acquire any new interest in any patent, invention, or license; and Anne B. Scott did not sell or exchange any interest in any patent. Indeed, she had no title or proprietary interest in any patent. Also, she did not sell or exchange her contract right to receive “royalty” payments under the Laundri-Matic agreement; for all payments made to her pursuant to the settlement were made in recognition of her continued retention of such contract right. If the additional royalties which Anne B. Scott claimed under her contract right had been paid by Avco voluntarily, and without the controversy, they would have been taxable to her as ordinary income, under the authorities above cited. The fact that they were paid (in reduced amount and over a somewhat different period) pursuant to a settlement of the controversy, does not change their character. A compromise of indebtedness is not “a sale or exchange,” within the meaning of section 117 of the 1939 Code. Cf. Hale v. Helvering, (C. A., D. C.) 85 F. 2d 819, affirming 32 B. T. A. 356; West Coast Securities Co., 14 T. C. 947, 961. In the absence of a sale or exchange, an esi-sential condition to the application of said statute is not met, and the benefits of capital gains treatment are not available. All of the amount of $21,589.56 here involved, which petitioner Anne B. Scott received from Avco Manufacturing Corporation in the year 1951, is taxable as ordinary income. Decision will be entered for the respondent. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter— ******* (4) Long-teum capital gain. — The term “long-term capita] gain” means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income;