# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1110

_____

Jennifer L. Meisner,                    *
                                        *
        Plaintiff - Appellant,          *  Appeal from the United States
                                        *  District Court for the District
    v.                                  *  of Nebraska.
                                        *
United States of America,               *
                                        *
        Defendant - Appellee.           *
                                        *


_____

Submitted:  September 11, 1997
Filed:        January 9, 1998

_____

Before HANSEN, ROSS, and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.


        Jennifer Meisner appeals from the district court's[1] denial of her motion for judgment as a matter of law (JMOL) in this federal income tax refund suit, contending that there was insufficient evidence to support a jury verdict for the United States.  She

_____

[1]The Honorable Kathleen A. Jaudzemis, United States Magistrate Judge for the District of Nebraska, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

also takes issue with several of the jury instructions and with the verdict form.  We affirm.

## I.

Jennifer Meisner was married to Randall Meisner from 1963 to 1981. Randall held certain pieces of intellectual property, consisting of licenses and copyrights related to songs performed by the Eagles, a singing group to which he at one time belonged.  In 1978, Randall entered into a termination agreement with the Eagles.  In this agreement, Randall ceded all of this intellectual property to the Eagles in return for a royalties contract entitling him to a portion of proceeds from the sales of certain of the Eagles' recordings.  He has not been a shareholder, director, or member of the Eagles since that time.

In 1981, the Meisners divorced.  At divorce, the couple entered into a property settlement agreement (PSA), pursuant to which Jennifer acquired an undivided  forty percent interest in the royalty contract.  Paragraph nine of the PSA provides:

> [Jennifer] shall have as her separate property and the title to the same shall be quieted in her the following items:
>
>    ....
> c. Forty percent (40%) of all earnings, copyrights, and recording rights [Randall] owns as a performer and/or composer as set forth in paragraph 5b.

Paragraph five of the PSA clarifies that the rights ceded to Jennifer include royalties, and provides, inter alia, that Jennifer's rights to an undivided forty percent interest in the royalty contract was not subject to any reversionary or contingent interests, but

would survive her own death as well as that of her ex-husband.[2]  It also provides that Jennifer's 40 percent would be paid directly from the Eagles to Jennifer.  The jury found, and both parties now agree, that after the divorce, Randall had no power to affect Jennifer's rights to the royalty payments.

Jennifer has received royalties consistent with her forty percent interest every year since 1982.  In 1994, she requested a refund of the federal income taxes she had paid on these royalties, claiming that the royalties were properly taxable to her ex-husband rather than to her.  A jury trial was held regarding her claims for 1987, 1988, 1990, and 1993.  At the close of the evidence, Jennifer moved for JMOL.  The judge

---

[2]Paragraph 5b of the PSA provides:

[Jennifer] shall receive forty percent (40%) of all the gross future earnings, royalties and income from the work performed and completed by [Randall] (including the "Eagles" royalties) prior to October 1, 1981, including, but not limited to, song and performer royalties from copyrights, songs composed and recordings.  [Randall] shall assign all of said property rights (to the extent of 40 percent) to [Jennifer], and such assignments shall be presented to the various publishers, recording companies and other concerns responsible for the payments of said royalties and use fees.  Payment of such forty percent (40%) shall commence with all royalties and use fees payable on or accumulated through November 1, 1981, and thereafter.  Such forty percent (40%) shall be paid direct to [Jennifer] except, where such payment is not practicable, it may be forwarded through [an accounting firm] directly to [Jennifer].  It is understood by the parties that such payments will be made at such times and intervals as provided in the various contracts now existing with such paying companies.

Gross future earnings shall mean such royalties and earnings payable after recoupment by the recording and royalty-paying companies of expenses and items recoverable under existing contracts with [Randall].

-3-

denied her motion, finding that a question of material fact still existed. The judge sent the case to the jury with a special verdict form limited to the issue of whether Randall had exercised power or control over Jennifer's royalty rights.[3] The jury found that Randall had not exerted power or control over Jennifer's rights—a verdict for the government. Jennifer appeals the denial of her motion for judgment as a matter of law and contests the instructions and verdict form given to the jury.

We review the denial of Jennifer's motion for JMOL de novo, and we apply the same standard as the district court. See <u>Keenan v. Computer Assocs. Int'l, Inc.</u>, 13 F.3d 1266, 1268 (8th Cir. 1994). "A [JMOL] is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position

---

[3]Instruction 12 provides:

> In order to meet her burden of proof . . . the plaintiff must prove one of the following:
>
> 1.    that Randy Meisner retains power and control over the 40% of the royalty payments assigned to plaintiff, Jennifer Meisner; or
> 2.    that Randy Meisner retains power and control over Jennifer Meisner's receipt of the 40% of the royalty payments.

The special verdict form asked the jury to determine, for every year in question, whether the plaintiff had

> proved by the greater weight of the evidence that Randy Meisner retained sufficient power and control over the royalty payments made to plaintiff in [year], or over plaintiff's receipt of the income in [year], to make it reasonable to treat Randy Meisner as the recipient of the income for purposes of federal income taxation.

The jury was asked no additional questions.

-4-

of the nonmoving party." See Giordano v. Lee, 434 F.2d 1227, 1231 (8th Cir. 1970), cert. denied, 403 U.S. 931 (1971). We apply this standard and affirm.

When a taxpayer is firmly entitled to receive income but anticipatorily assigns this income to another, the donor will be taxed on it just as though he had actually received it. See Harrison v. Schaffner, 312 U.S. 579, 580 (1941) (taxing assignor on assigned income); see also Greene v. United States, 13 F.3d 577, 581-82 (2d Cir. 1994) (discussion). This is true even if the income will not accrue until some future date. See Helvering v. Horst, 311 U.S. 112, 119-20 (1940) (assignment of bond coupons constituted anticipatory assignment). However, if the taxpayer instead assigns *an income-producing asset*, the result is different. All income that is thereafter produced by the asset is taxed to the assignee. See, e.g., Blair v. Commissioner, 300 U.S. 5, 13-14 (1937) (taxpayer's gift conveyed entire interest in income stream, and so did not fall under assignment of income doctrine); Caruth Corp. v. United States, 865 F.2d 644, 648-49 (5th Cir. 1989) ("When a taxpayer gives away earnings derived from income-producing asset, crucial question is whether asset itself, or merely the income from it, has been transferred."); Commissioner v. Reece, 233 F.2d 30, 34-35 (1st Cir. 1956) (where taxpayer assigned asset itself, subsequent income from that asset taxed to assignee). This distinction between income and income-producing assets is generally discussed in terms of "fruits" and "trees," and the rule is that fruits may not, for tax purposes, be attributed "to a different tree from that on which they grew." Lucas v. Earl, 281 U.S. 111, 115 (1930).

In deciding whether the rights assigned by Randall to Jennifer constituted a tree or merely fruits, we are mindful of the Supreme Court's decision in another assignment of royalties case, Commissioner v. Sunnen, 333 U.S. 591 (1948), which both parties cite as the controlling authority. There the Court wrote:

> It is not enough to trace income to the property which is its true source, a matter which may become more metaphysical than legal. Nor is the tax

> problem with which we are concerned necessarily answered by the fact that such property, if it can be properly identified, has been assigned. The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes. As was said in Corliss v. Bowers, 281 U.S. 376, "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is being paid."

Id. at 604-05 (emphasis added); see also Helvering v. Clifford, 309 U.S. 331, 335 (1940) (retention of control over corpus by donor suggested gift was one of income only). The district court rightly determined that this case, like Sunnen, turns on the amount of "power and control" retained by Randall after the transfer.

Our review of the record reveals no evidence of retained control by Randall. Randall unconditionally assigned Jennifer an undivided forty percent interest. He carved out no reversionary interest for either himself or his estate and retained no direct or indirect ability to affect the value of the rights transferred. Nor did he retain power over Jennifer's receipt of royalty payments—the checks did not come through him, but went directly to Jennifer. In short, the relevant facts here are much more similar to those at issue in Reece, 233 F.2d at 34-35 (finding no anticipatory assignment where taxpayer unconditionally assigned royalty rights to wife), and Greene, 13 F.3d at 582 (finding no anticipatory assignment where donor retained no control over the donated asset's ability to produce income), than they are to the facts in Sunnen, 333 U.S. at 608 (finding anticipatory assignment because husband retained substantial power over license contracts and payment of royalties to wife), or Caruth, 865 F.2d at 648-49 (5th Cir. 1989) (finding anticipatory assignment because donor carved out only a short-term interest for donee and retained a reversionary interest).

It is also significant that the transfer of rights occurred pursuant to a divorce settlement. In the context of a gift to a loved one (usually one within the donor's

nuclear family), it can be argued that "[t]he exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it." Horst, 311 U.S. at 118; see also Schaffner, 312 U.S. at 582 ("by the exercise of his power to command the income, [the transferor] enjoys the benefit of the income on which the tax is laid."). The same cannot be said in the context of a divorce settlement. Nor can it be argued that a transfer pursuant to a divorce fails to "effect[] any substantial change in the taxpayer's economic status." See Sunnen at 609-10. Divorce transfers are much more akin to negotiated arms-length transactions between adversaries than to displays of generosity.[4]

Because there is no evidence of retained control over Jennifer's rights by Randall and because this transfer of rights occurred pursuant to a divorce, we cannot say that the evidence is "susceptible of no reasonable inference sustaining the position of [the government]." See Keenan, 13 F.3d at 1269 (standard for JMOL). We therefore affirm the district court's denial of Jennifer's motion for JMOL.

We also find that jury instruction number 12 and the verdict form correctly stated the law. The language used in both the jury instruction and the verdict form comes right out of Sunnen, which both parties concede is the controlling authority. The trial court correctly found that there was no genuine issue of material fact regarding any question other than that of Randall's retained power and control, and therefore the instruction and special verdict form were appropriate. We commend the district court for reducing the case to its disputed essentials in the submission of the case to the jury.

---

[4]Jennifer relies heavily on the tax court's decision in Moore v. Commissioner, 27 T.C.M. (CCH) 536, 1968 WL 1221 (Tax Ct.). We find Moore unpersuasive. First, Moore did not deal with a transfer of rights made pursuant to a divorce settlement, but rather with a gift to the transferor's children "in consideration of my love and affection." As such, it is inapposite. Additionally, the tax court fails to even mention Sunnen and ignores the distinction between compensation for an individual's labor and royalties earned on intellectual property.

Jennifer also contests jury instruction number 9, and argues that the court abused its discretion in failing to include several of her proposed instructions. We have carefully reviewed the claims of error and find none.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.