# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 97-3441

———————

Vicki Cross,                            *
                                        *
      Plaintiff-Appellee,          *      Appeal from the United States
                                        *      District Court for the Western
    v.                               *      District of Missouri
                                        *
Emanuel Cleaver II, et al.              *
                                        *
      Defendants-Appellants.       *

———————

Submitted: March 10, 1998

Filed: April 10, 1998

———————

Before MCMILLIAN and FAGG, Circuit Judges, and BENNETT,[*] District Judge.

———————

---

[*] The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

**TABLE OF CONTENTS**

*I.* *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A.* *Factual Background* . . . . . . . . . . . . . . . . . . . 4
    *B.* *Procedural Background* . . . . . . . . . . . . . . . . . 7

*II.* *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A.* *Applicable Standards* . . . . . . . . . . . . . . . . . 11
        *1.* *Judgment as a matter of law* . . . . . . . . . . . 11
        *2.* *Improper jury instructions* . . . . . . . . . . . . 13
    *B.* *Preservation Of Errors* . . . . . . . . . . . . . . . . 17
        *1.* *The objection to the liability standard* . . . . . . 17
        *2.* *The objection to the combined instruction* . . . . . 19
    *C.* *Employer Liability For Retaliation* . . . . . . . . . . . 20
        *1.* *Retaliation under Title VII* . . . . . . . . . . . . 22
        *2.* *Standards for employer liability for harassment* . . 23
        *3.* *The nature of retaliatory action and the standard*
           *for employer liability* . . . . . . . . . . . . . . 26
    *D.* *Combined Retaliation Instruction* . . . . . . . . . . . 29
        *1.* *Retaliation under Missouri law* . . . . . . . . . . 30
        *2.* *Cross's state-law retaliation claim* . . . . . . . . 33

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . 34

BENNETT, District Judge.

    In this appeal, we are asked to consider the standard for employer liability for retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, a question this court has never directly addressed. Members of a city police board of commissioners appeal the denial of their post-trial motion for judgment as a matter of law on a female police

officer's claim of retaliation by the chief of police and other members of the police department after the police officer filed a charge of sexual harassment. The board members assert that the trial judge[1] erred in denying their post-trial motion, which asserted that the jury's verdict was against the weight of the evidence, because there was no evidence adduced at trial that the board either took part in retaliatory actions or that the board "knew or should have known" of any retaliatory actions by members of the police department. The board members argue that this "knew or should have known" standard applies by drawing an analogy to the standard for employer liability in hostile environment cases. The police officer counters that the board members failed to preserve this error by timely objection, but that, even if they did, the correct standard for employer liability on a Title VII retaliation claim is imputed liability, as in *quid pro quo* harassment cases. Case law demonstrates the currency of both standards among the federal courts.

Additionally, the board members contend that the trial judge erred by submitting the police officer's separate retaliation claims under Title VII and the Missouri Human Rights Act (MHRA) to the jury in the same instruction. They argue that because of this error, once the trial judge ruled that sovereign immunity barred the retaliation claim under the MHRA, the court could not determine under which law—state or federal—the jury had made its award of damages for retaliation. The police officer counters that the board members also failed to preserve this error, but that, in any event, the verdict in her favor should stand, because in this case, the elements of her

---

[1]The HONORABLE JOHN T. MAUGHMER, CHIEF UNITED STATES MAGISTRATE JUDGE, who tried the case pursuant to 28 U.S.C. § 636.

3

state and federal retaliation claims are identical.

We affirm.

## I. BACKGROUND

### A. Factual Background

The facts pertinent to this appeal are the following. Plaintiff-appellee Vicki Cross has been a police officer with the Kansas City, Missouri, Police Department (KCMPD or the Department) since April of 1990. The KCMPD does not exist as an entity that can be sued, and the parties agree that Cross's employer was and is in fact the Board of Police Commissioners, the governing body of the KCMPD and the entity that has the exclusive management and control of the Department. Individual past and present members of the Board are the defendant-appellants here. Although the Board is the governing body and Cross's employer, the Chief of Police of the KCMPD is responsible for the actions of the Department, attends Board meetings, and is required to provide a disciplinary report to the Board. At the times pertinent to Cross's lawsuit, the Chief of Police was Steven Bishop. Although Bishop was originally a defendant below, in his official capacity, the current Chief of Police, Floyd O. Bartch, was substituted as a defendant just prior to trial.

While working for the Department, Cross was assigned, at various times, to three out of five of its patrol divisions and to the Vice Unit. At the time of the events giving rise to her claims, she was assigned to the North Patrol Division. In 1991 or 1992, she met and began dating another police officer, Dan Garrett. Eventually, the relationship deteriorated to the point that, in February of 1994, Cross asked a mutual friend, a police sergeant, to tell Garrett to leave Cross alone. However, the sergeant told Cross that he believed that Garrett's conduct, as alleged by Cross, constituted sexual harassment in

4

violation of departmental policy.  The sergeant therefore told Cross to file a written complaint with the Department and the sergeant also prepared a companion memorandum.  Cross's complaint was filed on February 24, 1994.

As a result of Cross's complaint and the memorandum from the sergeant, the Department began a "miscellaneous" investigation, which included taking statements from Cross, Garrett, and others.  On March 23, 1994, a Deputy Chief of the Department sent Garrett a letter instructing him to stay away from Cross until the conclusion of the investigation.  Two days later, Garrett retired from the Department.

Garrett was a friend and long-time co-worker of then Chief of Police Steven Bishop.  Bishop testified that he learned of Cross's complaint against Garrett on February 25, 1994, the day after the complaint was filed.  Garrett and Bishop discussed the complaint on February 28, 1994, at which time Garrett testified that Bishop said he would "get the bitch," referring to Cross.  Bishop denies making that statement, but does not deny that he discussed the sexual harassment complaint with Garrett on February 28, 1994.

Cross offered sufficient evidence from which a jury could find that retaliation against her began almost immediately after her complaint of sexual harassment was filed.  That retaliation consisted of investigations, suspensions, and transfers of Cross.  More specifically, Cross presented evidence that in February of 1994, Bishop encouraged the Gladstone Police Department—another municipal police department with jurisdiction adjacent to the North Patrol Division of the KCMPD—to start an investigation of alleged sexual misconduct by Cross and a Gladstone Police Officer, Kenny Buck, whom Cross had started dating.  The Gladstone Police Department's investigation was eventually dismissed, because investigators found no merit to the charges of sexual misconduct by Cross and Buck.  Cross also presented evidence that

5

in April of 1994 she was transferred from the North Patrol Division, an assignment that was personally beneficial to her, to the East Patrol Division, a less convenient assignment. Also in April of 1994, apparently for the first time, complaints by Cross's ex-husband about divorce-related matters were "written up," instead of disregarded as involving only personal matters, not police work. All but three of Cross's ex-husband's complaints were deemed inappropriate for any investigation, and Cross's ex-husband recanted one of those three.

However, investigations of Cross were instigated concerning allegations that she had "participated in a plan or scheme to have a traffic ticket fixed" and that she had seen cocaine in a house, but had done nothing about it. Although Cross was suspended for twelve days as the result of the ticket-fixing charge, the Grievance Committee found that Cross had not participated in a scheme to "fix" the ticket, but had exhibited poor judgment in passing along money and the ticket without definitely knowing their purpose. Although the committee recommended that other allegations be stricken from her record as unsubstantiated, Chief Bishop refused to correct Cross's records. At about the same time, Cross was disciplined for missing a court appearance, even though, according to Cross, the desk sergeant admitted he should have filed a continuance.

The most substantial of the allegedly retaliatory actions, however, was Cross's suspension without pay for four months during 1995 pending investigation of charges by her ex-husband that she had committed a "burglary" when Cross and the ex-husband's former girlfriend entered his residence and removed a tape player. The Department instituted a criminal investigation, but when the city and county prosecutors both declined to prosecute the incident as either a "burglary" or a "trespass," the investigation concluded. Despite the fact that the internal criminal investigation

6

apparently lasted only days, Cross was not returned to work for some months more.  Instead, she remained on indefinite suspension pending investigation of other charges, including an allegation that she was working as a stripper, a charge dropped as unfounded and untrue after investigation.

Cross took many more days of sick leave during 1994 and 1995 than she had at any other time during her career with the KCMPD.  She attributed the additional leave to stress.  In early 1995, Cross expressed doubt that she was mentally or physically fit to do her job.  A Department psychologist eventually reviewed her records and certified her fit for duty.

Cross was reinstated with pay and allowances on July 18, 1995.  Prior to her reinstatement, however, Cross filed the present lawsuit on June 14, 1995.  After this suit was filed, no disciplinary actions were taken against Cross and, about a month-and-a-half prior to trial, Cross was transferred back to the North Patrol Division.

## B.  Procedural Background

As mentioned just above, Cross filed the present lawsuit on June 14, 1995.  She named as defendants the Department, Chief Bishop, in his official capacity, and persons who were or had been members of the Board, also in their official capacities.  Some of the members of the Board were dismissed from the action, because they were not members of the Board at the time suit was filed, and the Department was dismissed on the basis that it was not an entity that could sue or be sued.  Cross's complaint, as later amended on November 7, 1995, alleged sexual harassment in violation of Title VII in Count I; retaliation in violation of Title VII and the MHRA in Count II; and violation of civil rights pursuant to 42 U.S.C. § 1983 in Count III.  Cross dismissed Count I prior to trial.  Also prior to trial, the court substituted certain parties, among them Floyd O.

7

Bartch, as Chief of Police, in his official capacity, for former Chief Bishop.

Jury trial began on November 4, 1996, and concluded on November 7, 1996. At the close of Cross's case, the Board Members moved for judgment as a matter of law on Cross's retaliation claims in Count II on the ground, *inter alia*, that Cross had failed to show a submissible case on the element "[t]hat these Defendants knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Defendant's Motion for Judgment As A Matter Of Law At The Close Of Plaintiff's Evidence, pp. 2-3. The defendants' brief in support of that motion directed the court to their trial brief for arguments in support of judgment on the retaliation claim. Defendants' Suggestions In Support Of Motion For Judgment As A Matter Of Law, p. 2. The trial brief, however, offers no argument on the standard for employer liability in a retaliation case. *See* Trial Brief of Defendants, pp. 5-7. Furthermore, the extent of oral argument in support of this standard was an assertion that "there's been no evidence to establish the third element [of Count II], that these defendants knew, or should have known, of the harassment and failed to take immediate and appropriate corrective action." Transcript, p. 479-80. This first motion for judgment as a matter of law was denied.

At the close of all evidence on November 7, 1996, the defendants again moved for judgment as a matter of law. As one ground for judgment on Cross's retaliation claim, the defendants once again asserted that no evidence had been submitted that the defendants knew or should have known of the harassment. However, the proffered no oral argument whatsoever in support of that contention. *See* Transcript, pp. 608-30. The court denied the second motion for judgment as a matter of law, just as it had denied the first. However, the court did dismiss Count III as to the Board Members, leaving only Bartch, in his official capacity, as a defendant on that claim.

The jury found in favor of Cross on her retaliation claim under state and federal law in Count II and awarded $70,000 in compensatory damages and $20,000 in punitive damages against the Board Members. On Count III, the civil rights claim, the jury awarded compensatory damages of $30,000 against Bartch.

On November 15, 1996, the defendants renewed their motion for judgment as a matter of law, or, in the alternative, moved for a new trial. This time, in pertinent part, the defendants asserted that the verdict on the retaliation claim was "against the weight of the evidence";[2] that it was improper to submit the state and federal retaliation claims in a single instruction; that the Board Members were entitled to sovereign immunity on the state-law retaliation claim; and that punitive damages were permitted on the retaliation claim only under the MHRA, not Title VII, and hence the punitive damages award on the retaliation claim was also barred by sovereign immunity. The defendants did not specifically reiterate their assertion that there was no evidence that they knew or should have known of the retaliation, but failed to take immediate and appropriate corrective action. Nor did the defendants argue any basis in their supporting brief for the "knew or should have known" standard for employer liability on a Title VII retaliation claim. Similarly, they did not explain in their brief in what respect the elements of a Title VII retaliation claim differed from a retaliation claim under the MHRA. Instead, the Board Members' brief in support of their post-trial motion for judgment as a matter of law concentrated on the sovereign immunity issues. Cross also filed a post-trial motion seeking equitable relief, attorneys' fees and costs, and further relief.

On July 31, 1997, the trial judge ruled on the parties' post-trial motions. The

---

[2]The Board Members also asserted that the verdict on the retaliation claim was excessive, but they do not press that point on appeal.

court found that submitting the retaliation claims under state and federal law in one instruction was proper. First, the court found that the Board Members did not object to the combined verdict director during trial as required by FED. R. CIV. P. 51. Second, the court found the post-trial objection groundless, because the requirements for finding a violation under state and federal law were identical. The court also found that the jury's verdict was supported by the evidence, although the court did not specifically address any contention that the verdict was rendered on the wrong standard of employer liability.

The trial court did grant the Board Members some relief, however. The court found that sovereign immunity barred the retaliation claim under the MHRA. As a consequence, the court took away the jury's award of punitive damages on the retaliation claim, because that award was only pursuant to the MHRA. The court also took away the jury's award of damages on Count III, the civil rights claim, on the ground that relief on an "official capacity" suit pursuant to 42 U.S.C. § 1983 is limited to an injunction and no injunctive relief was possible in this case, since Chief Bishop was no longer employed by the Department. Thus, the court dismissed the civil rights count in its entirety. The court also granted parts of Cross's post-trial motion, awarding her attorneys' fees and costs, but denying her requests for other equitable relief.

The Board Members now appeal the portions of the July 31, 1997, ruling relating to the submission of the two retaliation claims in a single instruction and the trial judge's conclusion that there was evidence to support the jury's verdict on the retaliation claims, over the Board members' objections that there was no evidence that they participated in the retaliation or that they knew or should have known of the retaliation. Cross does not appeal any part of the trial court's ruling on either her own or the defendants' post-trial motion.

10

## II. ANALYSIS

### A. Applicable Standards

#### 1. Judgment as a matter of law

This court reviews *de novo* the denial of a motion for judgment as a matter of law (JAML) pursuant to FED. R. CIV. P. 50, applying the same standard as the trial court. *See Stockmen's Livestock Mkt., Inc. v. Norwest Bank of Sioux City, N.A.*, 135 F.3d 1236, 1240 (8th Cir. 1998); *Equal Employment Opportunity Comm'n v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998); *Meisner v. United States*, 133 F.3d 654, 656 (8th Cir. 1998); *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir. 1998); *Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.*, 103 F.3d 1422, 1430 (8th Cir. 1997). When the motion seeks judgment on the ground of insufficiency of the evidence, the question is a legal one. *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997); *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324 (8th Cir. 1997). A jury verdict must be affirmed "'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.'" *Stockmen's Livestock Mkt., Inc.*, 135 F.3d at 1240-41 (quoting *Chicago Title Ins. Co. v. Resolution Trust Corp.*, 53 F.3d 899, 904 (8th Cir. 1995)); *HBE Corp.*, 135 F.3d at 554 ("Judgment as a matter of law is appropriate only if no reasonable jury could find for the non-moving party when viewing the evidence in its favor with the benefit of all reasonable inferences," citing FED. R. CIV. P. 50(a), and *Ryther v. KARE 11*, 108 F.3d 832, 844 (8th Cir. 1997) (*en banc*), *cert. denied*, ___ U.S. ___, 117 S. Ct. 2510 (1997)). Thus, the court must ask if sufficient evidence was produced to support a reasonable finding on each of the elements of the plaintiff's claim or claims. *HBE Corp.*, 135 F.3d at 554; *Deneen*, 132 F.3d at 435. This means that the court must assume as proven all facts that the nonmoving party's evidence tended to show, give

11

the nonmovant the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in the nonmovant's favor. *Hathaway*, 132 F.3d at 1220. To put it another way, JAML "'is in order only where the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" *Meisner*, 133 F.3d at 656 (quoting *Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir. 1970), *cert. denied*, 403 U.S. 931 (1971)); *Hathaway*, 132 F.3d at 1220 (JAML is proper "'[o]nly when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable jury could have found for the nonmoving party," quoting *Ryther*, 108 F.3d at 845).[3]

Furthermore, where a party fails to make a timely and adequate objection before the trial court to a matter subsequently raised on appeal, this court will review the matter only for "plain error." *Rush v. Smith*, 56 F.3d 918, 922 (8th Cir. 1995) (*en banc*) (where a party failed to lodge a timely objection to the trial judge's comments,

---

[3]The Board Members moved, in the alternative, for a new trial. As this court recently explained,

> We review the district court's denial of [a] motion for a new trial for an abuse of discretion. *Keenan v. Computer Assoc. Int'l, Inc.*, 13 F.3d 1266, 1269 (8th Cir. 1994). Where, as here, "the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion 'is virtually unassailable on appeal.'" *Id.* (quoting *Peterson v. General Motors Corp.*, 904 F.2d 436, 439-40 (8th Cir. 1990)). "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." *Id.*

*Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997); *accord Schultz v. McDonnell Douglas Corp.*, 105 F.3d 1258, 1259 (8th Cir. 1997) ("We review the denial of a motion for a new trial under an abuse of discretion standard," citing *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994)), *cert. denied*, ___ U.S. ___, 118 S. Ct. 56 (1997).

this court reviewed only for "plain error"), *cert. denied*, ___ U.S. ___, 116 S. Ct. 409 (1995); *accord Dupre v. Fru-Con Eng'g, Inc.*, 112 F.3d at 329, 336 (8th Cir. 1997) (observing that "[o]ne of the most fundamental principles in the law of evidence is that in order to challenge a trial court's exclusion of evidence, an attorney must preserve the issue for appeal by making an offer of proof," and where the offer is unrecorded, review of the exclusion of evidence is for "plain error"); *Yannacopoulos v. General Dynamics Corp.*, 75 F.3d 1298, 1304 (8th Cir. 1996) ("When a party waits until the end of a case to complain of juror misconduct, . . . the objection is waived, . . . and we will reverse the District Court only if it has committed plain error"; citations omitted); *McKeel v. City of Pine Bluff*, 73 F.3d 207, 211 (8th Cir. 1996) (in order to preserve the error of exclusion of evidence, pursuant to FED. R. EVID. 103, the party objecting must lodge an objection at trial, and failure to object limits the appellate court to "plain error" review). "Under plain error review, an error not identified by a contemporaneous objection is grounds for reversal only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *Rush*, 56 F.3d at 922 (citing *Fleming v. Harris*, 39 F.3d 905, 908 (8th Cir. 1994)); *accord Dupre*, 112 F.3d at 337; *Yannacopoulos*, 75 F.3d at 1304 ("Plain error is error which has a serious effect on the fairness of the proceedings.").

### 2.   *Improper jury instructions*

As the second ground for appeal of denial of their motion for JAML, or in the alternative, motion for new trial, the Board Members object to the instructions given by the trial court on the retaliation claims.  The trial court has "broad discretion" in instructing the jury.  *Ryther v. KARE 11*, 108 F.3d 832, 846 (8th Cir. 1997) (*en banc*) (citing *Hastings v. Boston Mut. Life Ins. Co.*, 975 F.2d 506, 510 (8th Cir. 1992)), *cert. denied*, ___ U.S. ___, 117 S. Ct. 2510 (1997).  Instructions do not need to be

technically perfect or even a model of clarity. *Id.* Rather, "[i]n reviewing jury instructions, this court must 'determine whether the instruction[s] fairly and adequately state[] the applicable law when reading the instructions as a whole.'" *Stockmen's Livestock Mkt., Inc.*, 135 F.3d at 1245-46 (quoting *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 813 (8th Cir. 1993)); *Dupre v. Fru-Con Eng'g, Inc.*, 112 F.3d 329, 335 (8th Cir. 1997) ("'[W]hen reviewing a claim of instructional error, we consider the instructions in their entirety and determine whether, when read as a whole, the charge fairly and adequately submits the issues to the jury,'" quoting *Laubach v. Otis Elevator Co.*, 37 F.3d 427, 429 (8th Cir. 1994)); *Slathar v. Sather Trucking Corp.*, 78 F.3d 415, 418 (8th Cir.) (stating this standard of review), *cert. denied*, ___ U.S. ___, 117 S. Ct. 179 (1996). Furthermore, before an appellant is entitled to any relief on the ground that the trial court erred in giving or not giving an instruction, the error must be prejudicial. *Id.; Dupre*, 112 F.3d at 336; *Walker v. AT&T Techs.*, 995 F.2d 846, 849 (8th Cir. 1993).

Rule 51 of the Federal Rules of Civil Procedure specifically provides that "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." FED. R. CIV. P. 51. As this court has explained,

> "[T]he purpose of Rule 51 is to compel litigants to afford the trial court an opportunity to cure [a] defective instruction and to prevent the litigants from ensuring a new trial in the event of an adverse verdict by covertly relying on the error." *Missouri Pac. R.R. v. Star City Gravel Co.*, 592 F.2d 455, 459 (8th Cir. 1979), *quoted in Barton v. Columbia Mut. Cas. Ins. Co.*, 930 F.2d 1337, 1341 (8th Cir. 1991). Rule 51 requires a litigant to state distinctly the specific

14

objections to a jury instruction before the jury retires; otherwise, a litigant waives the right on appeal to object to a jury instruction on those grounds, *see Commercial Property Invs. Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 643 (8th Cir. 1995), and "we will reverse only if the instruction amounts to plain error," *see Rolscreen Co. v. Pella Prods.*, 64 F.3d 1202, 1211 (8th Cir. 1995).

*Dupre*, 112 F.3d at 333; *accord Westcott v. Crinklaw*, 133 F.3d 658, ___ (8th Cir. 1998) ("[Rule 51] requires specific objections before the jury retires so that the district court may correct errors and avoid the need for a new trial."); *Ryther*, 108 F.3d at 845 ("'In order to preserve an objection [to jury instructions] for appeal, '[t]he grounds of the objection must be specifically stated, and the error claimed on appeal must be based on the same grounds stated in the objection,'" quoting *Starks v. Rent-A-Center*, 58 F.3d 358, 361 (8th Cir. 1995)); *Doyne v. Union Elec. Co.*, 953 F.2d 447, 450 (8th Cir. 1992) (also observing that Rule 51 is intended to require litigants to afford the trial court the first opportunity to cure defective instructions and to prevent parties from preparing a covert ground for appeal).

Not only is an objection required, but a "general objection [is] insufficient to preserve the specific objections to the instruction" that the appellant may subsequently seek to raise on appeal. *Id.* (citing *Denniston v. Burlington N., Inc.*, 726 F.2d 391, 393 (8th Cir. 1984)). Rather, "'[o]bjections must "bring into focus the precise nature of the alleged error."'" *Westcott*, 133 F.3d at ___ (quoting *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 256-57 (8th Cir. 1996), in turn quoting *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943)). "Our law on this subject is crystal clear: to preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection on the record." *Dupre*, 112 F.3d at 334 (citing cases). In this circuit, making objections "on the

15

record" "entails not only stating the objection, but also stating the specific grounds for that objection." *Id.* It is therefore insufficient for counsel merely to rest on indefinite objections to jury instructions without stating on the record the specific grounds therefor and failure to take the opportunity to make a proper record waives arguments that might subsequently be raised on appeal. *Id.*

Where an appellant has failed to make an adequate objection below to preserve the purported error in instructions—as with failure to object to other purported errors by the trial court—this court reviews only for "plain error." *Westcott*, 133 F.3d at ___; *Dupre*, 112 F.3d at 334; *Ryther*, 108 F.3d at 847 (objections to instructions that have been waived by lack of timely assertion are reviewed only for "plain error"). Again, under plain error review we reverse "'only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left uncorrected.'" *Id.* (quoting *Rush v. Smith*, 56 F.3d 918, 922 (8th Cir.) (*en banc*), *cert. denied*, ___ U.S. ___, 116 S. Ct. 409 (1995)); *Dupre*, 112 F.3d at 334 (also citing *Rush*); *Ryther*, 108 F.3d at 847 ("plain error" review "is 'narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings,'" quoting *Des Moines Bd. of Water Works Trustees v. Alvord*, 706 F.2d 820, 824 (8th Cir. 1983)); *Christopherson v. Deere & Co.*, 941 F.2d 692, 694 (8th Cir. 1991) ("'[A]ny plain error exception to compliance with Rule 51 "is confined to the exceptional case where error has seriously affected the fairness, integrity or public reputation of judicial proceedings,"'" quoting *Smith v. Honeywell, Inc.*, 735 F.2d 1067, 1069 (8th Cir.), *cert. denied*, 469 U.S. 1077 (1984), in turn quoting *Rowe Int'l v. J-B Enterprises*, 647 F.2d 830, 835 (8th Cir. 1981), and also stating that the error must have "'contribute[d] to a miscarriage of justice,'" quoting *United States v. Young*, 470 U.S. 1, 16 (1985)).

16

## B. *Preservation Of Errors*

The Board Members appeal on two grounds. First, they contend that the the trial court improperly denied them JAML on Cross's Title VII retaliation claim, and the jury's verdict on that claim was unsupported by the evidence, because there was no evidence that these defendants either took retaliatory action against Cross or knew or should have known of retaliatory actions against Cross. Second, they contend that the trial court erred in instructing the jury on Cross's state and federal retaliation claims in a single instruction, instead of setting forth each claim in a separate instruction. Cross contends, in the first instance, that the Board Members failed to preserve either of their grounds for appeal with timely and adequate objections before the trial court. We will consider in turn whether the Board Members have preserved each of their issues for appeal.

### 1. *The objection to the liability standard*

The Board Members assert that they raised the issue of the "knew or should have known" standard in their motion for JAML at the close of plaintiff's evidence, and again in their motion for JAML at the close of all evidence. Additionally, they claim that they specifically argued for this standard in oral arguments on each of these motions. Furthermore, they contend that their arguments to the trial court that the agency instruction on the retaliation claim was overbroad, because it would tend to cause the jury to believe that the defendants would be responsible for rumors, was "essentially an argument that the 'knew or should have known' standard should apply." Reply Brief of Appellants, p. 5.[4] The Board Members thus contend that they presented

---

[4] The court finds this last argument unconvincing at best, because it would require an incredible stretch of language and conception to make an argument that an instruction is "overbroad," because it would tend to cause the jury to believe that the defendants would be responsible for rumors, into an argument that the standard applicable to employer liability for retaliation in violation of Title VII was that the employer "knew or should have known" of the retaliation. Nonetheless, there are more fundamental flaws to the Board Members' arguments upon which this court's conclusions are based.

17

to the trial court the issue of the appropriate standard for employer liability on a Title VII retaliation claim, but their contentions were overruled.

Although the Board Members mentioned as a ground for JAML at the close of Cross's case and again at the close of all of the evidence that Cross had failed to present a submissible case on the element "[t]hat these Defendants knew or should have known of the harassment and failed to take immediate and appropriate corrective action," they plainly failed to reiterate this ground for JAML in their renewed post-trial motion. Rule 50(b) provides for the renewal of a motion for JAML after trial when such a motion has been made at the end of all of the evidence. FED. R. CIV. P. 50(b);[5] *BE & K Constr. Co. v. United Bhd. of Carpenters & Joiners of Am, AFL-CIO*, 90 F.3d 1318, 1325 (8th Cir. 1996). The Board Members missed this procedural step. Where an appellant fails to renew its motion for JAML after the verdict, this court "'cannot

---

[5]Rule 50(b) provides, in pertinent part, as follows:

> If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59.

test the sufficiency of the evidence to support the jury's verdict beyond application of the "plain error" doctrine in order to prevent a manifest miscarriage of justice.'" *James E. Brady & Co., Inc. v. Eno*, 992 F.2d 864, 868 (8th Cir. 1993) (quoting *Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155, 157 (8th Cir. 1975)); *accord Dupre*, 112 F.3d at 336 (errors at trial not properly preserved are reviewed only for plain error); *Yannacopoulos*, 75 F.3d at 1304 (same); *McKeel*, 73 F.3d at 211 (same); *Rush*, 56 F.3d at 922 (same). This court will therefore conduct only a "plain error" review of the standard for employer liability on Title VII retaliation claims.

### 2. *The objection to the combined instruction*

The Board Members' procedural default on their objection to the combined instruction on state and federal retaliation claims is different. Instead of failing to renew post-trial an objection raised in a prior motion for JAML or prior objection to jury instructions, the record contains no indication that the Board Members ever raised an objection to the combined retaliation instruction *before* their post-trial "renewal" of their motion for JAML or new trial. The Board Members were required to raise an objection to the combined instruction "before the jury retire[d] to consider its verdict," and their objection to the combined instruction had to state distinctly the specific objections to the combined instruction and the grounds therefor. FED. R. CIV. P. 51; *Westcott*, 133 F.3d at ___; *Dupre*, 112 F.3d at 334; *Ryther*, 108 F.3d at 845; *Starks,* 58 F.3d at 361; *Doyne*, 953 F.2d at 450. The Board Members have pointed to nothing in the record that would lead this court to believe that they ever proffered any objection to the combined instruction before it was submitted to the jury or that, if they raised some objection, that it was sufficiently "distinct" or "specific," or adequately stated the grounds therefor to preserve the error. Even if they proffered separate instructions on the state and federal retaliation claims, this would not suffice to preserve the error of

19

the combined instruction, because "[e]ven tendering an alternative instruction without objecting to some specific error in the trial court's charge or explaining why the proffered instruction more accurately states the law does not preserve the error for appeal." *Westcott*, 133 F.3d at ___; *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d at 256-57. Consequently, this purported error in the jury instructions will also be reviewed only for "plain error." *See Westcott*, 133 F.3d at ___; *Dupre*, 112 F.3d at 334; *Ryther*, 108 F.3d at 847.

Having established the standard of review for the questions presented on this appeal, we turn now to the merits of the Board Members' assertions of error.

### C. Employer Liability For Retaliation

The Board Members assert, first, that the trial court erred in denying their renewed motion for JAML or new trial, because no evidence was adduced at trial that the Board Members knew or should have known about the alleged retaliation against Cross. They state that they can find no decision of this court applying a *respondeat superior* or vicarious liability standard to a retaliation claim, and that Cross's claims clearly do not involve claims of *quid pro quo* harassment. Rather, they argue that the "knew or should have known" test is applicable to a retaliation claim by analogy to the holdings of this court in hostile environment sexual harassment cases under Title VII, such as *Davis v. City of Sioux City*, 115 F.3d 1365 (8th Cir. 1997), and *Smith v. St. Louis Univ.*, 109 F.3d 1261 (8th Cir. 1997).

However, Cross points out that in *Davis* and other cases in which this court has discussed retaliation claims, this court has *never* held that proof that the employer knew or should have known of the retaliation was an element of the claim. Cross likens retaliatory conduct by a supervisory employee, such as the Chief of Police here, to *quid*

20

*pro quo* harassment, because it is the Chief's power as an agent of the employer that allowed him to retaliate. She argues further that application of the "knew or should have known" standard to retaliation claims would effectively emasculate Title VII, because there would be no entity liable for retaliation where a governmental board or entity delegates daily operations to members of a command staff, and application of such a standard would also make meaningless the distinction between suing Board Members in their official capacities and suing them in their individual capacities.

Courts are split on, or at least uncertain about, the standard for liability of an employer for retaliation that violates Title VII. *See, e.g., Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 494-95 (7th Cir. 1997) (*en banc*) (*per curiam*) (in a "welter" of opinions addressing different aspects of employer liability, making clear that a majority of the court agreed on a "negligence" standard for hostile-environment claims and "strict" liability for *quid pro quo* harassment, but not clearly placing retaliation in either category), *petition for cert. granted in part*, *Burlington Industries, Inc. v. Ellerth*, ___ U.S. ___, 118 S. Ct. 876 (Jan 23, 1998) (No. 97-569); *Reed v. A. W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1180 (2d Cir. 1996) (panel decision discussing the application of "agency" principles for employer liability for co-worker practices, including retaliation, applying a "knew but did nothing" standard); *and compare Davis v. Palmer Dodge West, Inc.*, 977 F. Supp. 917, 925 (S.D. Ind. 1997) (relying on a concurring opinion in *Jansen, supra*, for the proposition that it was "clear" in the Seventh Circuit that "courts must hold an employer to a strict liability standard for *quid pro quo* harassment, and a heightened negligence standard for hostile environment and retaliatory harassment by a supervisor"); *with Gary v. Washington Area Transit Auth.*, 886 F. Supp. 78, 88 (D.D.C. 1995) (holding that, "[i]n a retaliation case, as in a the *quid pro quo* case, the employer should be held strictly liable)." Although it is clear in this circuit that

different standards apply to employer liability for hostile environment and *quid pro quo* cases, *see, e.g., Davis v. City of Sioux City*, 115 F.3d 1365 (8th Cir. 1997), it isn't clear into which category retaliation generally, and retaliation by a supervisor specifically, falls.

### 1. Retaliation under Title VII

Title VII prohibits an employer from retaliating against an employee because he or she "has opposed any practice made an unlawful employment practice by this subchapter," or "has made a charge" of harassment, or has "participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The elements of a claim of retaliation in violation of Title VII are the following: (1) the plaintiff filed a charge of harassment or engaged in other protected activity; (2) the plaintiff's employer subsequently took adverse employment action against the plaintiff; and (3) the adverse action was causally linked to the plaintiff's protected activity. *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997) (citing *Cram v. Lamson & Sessions, Co.*, 49 F.3d 466, 474 (8th Cir. 1995)); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) ("The elements of a retaliation claim under § 1981 and Title VII are (1) protected activity, (2) subsequent adverse employment action, and (3) a causal relationship between the two. *See Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259 (8th Cir. 1996) (§ 1981 retaliation claim); *Kobrin [v. University of Minnesota]*, 34 F.3d [698,] 704 [(8th Cir. 1994)] (Title VII retaliation claim)."); *Harris v. Secretary, U.S. Dep't of the Army*, 119 F.3d 1313, 1318 (8th Cir. 1997) ("To establish a prima facie case of retaliation, [the employee] needed to show: 1) she complained of discrimination; 2) the [employer] took adverse employment action against her; and 3) the adverse action was causally related to her complaint."); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997)

(also describing these elements of a *prima facie* showing of retaliation); *Davis v. City of Sioux City*, 115 F.3d 1365, 1369 (8th Cir. 1997) ("To prove unlawful retaliation, [the employee] must show that she complained of discrimination, the [employer] took adverse action against her, and the adverse action was causally related to her complaint," citing *Marzec v. Marsh*, 990 F.2d 393, 396 (8th Cir. 1993)); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1266 (8th Cir. 1997) (also describing these elements as establishing a *prima facie* case of retaliation). Once this *prima facie* showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. *Manning*, 127 F.3d at 692 (citing *Jackson v. Delta Special Sch. Dist. No. 2*, 86 F.3d 1489, 1494 (8th Cir. 1996)); *Harris*, 119 F.3d at 1318 (also citing *Jackson*); *Moschetti v. Chicago, Central & Pacific R. Co.*, 119 F.3d 707, 709 (8th Cir. 1997) (explaining this burden-shifting analysis, citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996)); *Montandon*, 116 F.3d at 359. The factfinder is then "left to determine if [the employee] presented evidence capable of proving that the [employer's] proffered reasons for termination were a pretext for illegal retaliation." *Harris*, 119 F.3d at 1318; *accord Moschetti*, 119 F.3d at 709; *Montandon*, 116 F.3d at 359.

### 2. Standards for employer liability for harassment

Cross is correct that the cases cited just above do not appear to require proof that the employer knew or should have known of the retaliation as an element of a retaliation claim. Yet, as this court pointed out in *Davis*, this court has consistently required proof that the employer knew or should have known of harassment, yet failed to take proper remedial action—even when the harassment was by a supervisory employee—in order to hold the employer liable for a sexually hostile environment.

23

*Davis*, 115 F.3d at 1368 (citing *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997); *accord Todd v. Ortho Biotech, Inc.*, ___, F.3d ___, ___, 1998 WL 92207, *2-3 (8th Cir. Mar. 5, 1998) (reiterating the "knew or should have known" standard for hostile environment sexual harassment by a supervisor, and rejecting a standard imputing liability where the supervisor uses his actual or apparent authority to further the harassment where the supervisor had no direct authority over the victim); *Kinman v. Omaha Pub. Sch. Dist.*, 94 F.3d 463, 469 (8th Cir. 1996); *Callanan v. Runyun*, 75 F.3d 1293, 1296 (8th Cir. 1996); and *Burns v. McGregor Elec. Indus., Inc.*, 955 F.3d 559, 564 (8th Cir. 1992)).  In *Davis*, this court held that the district court had abused its discretion in not instructing the jury on the "knew or should have known" employer liability standard on the plaintiff's hostile environment claim. *See id.* at 1369.

Even so, in *Davis*, this court did not then apply the "knew or should have known" standard to the plaintiff's retaliation claim. *Id.*  Instead, the court considered whether *the employer* took adverse action against the plaintiff. *Id.*  This court's decision in *Smith*, a decision cited in *Davis* as applying the "knew or should have known" standard to a hostile environment claim, is perhaps still more instructive, because in that case not only was the plaintiff's supervisor the alleged harasser on the plaintiff's hostile environment claim, but he was also the person whose conduct was alleged to be the basis for the plaintiff's retaliation claim.  *See Smith*, 109 F.3d at 1265-66.  Although this court required proof that the employer knew or should have known of the hostile environment harassment by the supervisor to hold the employer liable on the hostile environment claim, this court did not require proof that the employer knew or should have known of a supervisor's retaliation, but did nothing, for the plaintiff to prevail on her retaliation claim.  *Smith*, 109 F.3d at 1265-66.  Instead, the court apparently imputed the retaliatory conduct of the supervisor—which in that case

24

involved negative comments about the plaintiff to prospective employers—directly to the employer. *Id.*

In *Davis*, this court noted that the "knew or should have known" standard for employer liability in hostile environment cases was in contrast to the standard applicable in *quid pro quo* cases:

> In the situation of quid pro quo sexual harassment by a supervisor, where the harassment results in a tangible detriment to the subordinate employee, liability is imputed to the employer. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 76, 106 S. Ct. 2399, 2410, 91 L. Ed. 2d 49 (1986) (Marshall, J., concurring in judgment).

*Davis*, 115 F.3d at 1367; *accord Todd*, ___ F.3d at ___, 1998 WL 92207 at *2 (also noting this distinction, relying on *Davis*). A number of courts have explained why this should be so. In *Reinhold v. Commonwealth of Virginia*, 135 F.3d 920 (4th Cir. 1998), the Fourth Circuit Court of Appeals observed that whether the employer knew or should have known of the harassment was always an element of a sexual harassment claim, but that this requirement "is automatically satisfied" where the sexual harassment was of the *quid pro quo* variety and "is committed by one of the employer's supervisors," because the retaliator was acting as the employer. *Reinhold*, 135 F.3d at 931-32. The Eleventh Circuit Court of Appeals has explained that "'[w]hen a supervisor requires sexual favors as a *quid pro quo* for job benefits, the supervisor, by definition, acts as the company.'" *Farley v. American Cast Iron Pipe Co.*, 115 F.3d 1548, 1552 (11th Cir. 1997) (quoting *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316 (11th Cir. 1989)). The Second Circuit Court of Appeals, too, has explained that, "[b]ecause the *quid pro quo* harasser, by definition, wields the employer's authority to alter the terms and conditions of employment—either actually or

25

apparently—the law imposes strict liability on the employer for *quid pro quo* harassment." *Karibian v. Columbia Univ.*, 14 F.3d 773, 777 (2d Cir.), *cert. denied*, 512 U.S. 1213 (1994).

> **3.    *The nature of retaliatory action and the standard for employer liability***

A review of decisions of this court reveals that employment actions that are sufficiently adverse to sustain a retaliation claim are also often actions in which the retaliator wields the employer's authority—either actually or apparently—to effect the retaliation, which must take the form of a material employment disadvantage. *See, e.g., Manning*, 127 F.3d at 692 (employment actions that were sufficiently adverse to sustain a retaliation claim include "tangible change in duties or working conditions that constituted a material employment disadvantage," or an "ultimate employment decision," such as termination, demotion, reassignment, but not merely hostility, disrespect, or ostracism); *Kim*, 123 F.3d at 1060 (sufficiently adverse actions include discharge, reduction of duties, actions that disadvantage or interfere with the employee's ability to do his or her job, and "papering" of an employee's file with negative reports and reprimands); *Montandon*, 116 F.3d at 359 (sufficiently adverse actions include termination, demotion, transfers involving changes in pay or working conditions, and negative evaluations used as the basis for other employment actions); *Davis*, 115 F.3d at 1369 (retaliation took the form of transfer to a less desirable position, because that position offered little opportunity for salary increases or advancement); *Smith*, 109 F.3d at 1265-66 (retaliation took the form of negative references to prospective employers).  It would follow that employer liability would also be imputed for such retaliatory acts, because in such circumstances, the retaliator is, by definition, acting as the employer.

This court's recent decision in *Todd* is not to the contrary. *See Todd*, ___ F.3d at ___, 1998 WL 92207 at *2-3. In *Todd* this court found it was reversible error for the district court to instruct a jury that the employer could be held liable for sexual harassment committed by a supervisor if the supervisor used his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of his supervisory powers. *Id.* The court found it to be contrary to the statute and principles of agency law to impose liability upon an employer for the wrongful act of a supervisor acting well beyond the scope of his duty, particularly when the harassment complained of was a one-time act committed outside the workplace that the employer could not have anticipated. *Id.* at *4. The court therefore reiterated the applicability of the "knew or should have known" standard. *Id.* However, the case before the court in *Todd* was one of hostile environment sexual harassment, not retaliation, and the court held the "knew or should have known" standard was appropriate where the "supervisor" had no direct authority over the victim. *Id.* Here, Chief Bishop had direct authority over the Cross and the record supports the conclusion that he used his actual or apparent authority, and acted within the scope of his duty, to effect retaliation, rather than simply to harass Cross.

Consequently, in this case, where the retaliation took the form of investigations, transfers, and suspensions by Chief Bishop, the retaliation was effected by using the Chief's authority—actual or apparent—to act as the employer, that is, by using his delegated authority from the Board to manage the Department. In such a situation, it was not plain error for the trial court not to require proof that the Board Members, Cross's actual employer, knew or should have known of the retaliation. Imposing liability in the absence of proof that the employer knew or should have known of retaliation did not result in any miscarriage of justice. *Rush*, 56 F.3d at 922.

27

It is also possible that the retaliator could be so high in the employer's hierarchy that, employing common-law agency principles as directed by the Supreme Court, *see Meritor*, 477 U.S. at 72, the retaliatory conduct would necessarily be imputed to the employer. *Cf. Torres v. Pisano*, 116 F.3d at 625, 633-34 (2d Cir. 1997) (holding that an employer will be liable for sexual harassment by one of its supervisors if the supervisor was at a sufficiently high level in the company, citing the Restatement of Agency, and its prior decision in *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63-64 (2d Cir. 1992)). Here, where the retaliator was the Chief of Police, the person to whom the Board had delegated responsibility for the actions of the Department, the retaliatory conduct of the Chief would necessarily be imputed to the Board. Thus, on this ground also, it was not plain error for the trial court not to require proof that the Board Members knew or should have known of the retaliatory conduct in order to hold the Board Members liable for the retaliation, as no miscarriage of justice resulted. *Rush*, 56 F.3d at 922.

We can envision the circumstance, however, in which a supervisory employee who engages in retaliation is neither so high in the hierarchy that his or her conduct is necessarily imputed to the employer, nor does the retaliatory conduct in which the supervisor engages necessarily involve wielding the actual or apparent authority of the employer. Thus, the standard of employer liability applicable to a retaliation claim may well depend upon both the status of the retaliator and the nature of the retaliatory conduct.

In the circumstances of this case, however, we hold that, where a supervisory employee with the power to hire, fire, demote, transfer, suspend, or investigate an employee is shown to have used that authority to retaliate for the filing of a charge of sexual harassment, the plaintiff need not also prove that the employer participated in

or knew or should have known of the retaliatory conduct to hold the employer liable. Indeed, in the circumstances where the employer is a board, and that board delegates authority to an individual to run day-to-day operations of a department, application of the "knew or should have known" standard to the members of the board would have the effect of insulating the employer from Title VII liability.

Thus, it was not plain error for the trial court to deny the Board Members' motion for JAML on the ground that no evidence had been adduced that the Board Members knew or should have known of the retaliation against Cross, because no such proof was required in this case. Furthermore, we find that the evidence presented at trial was sufficient to support a reasonable finding on each of the required elements of Cross's retaliation claim. *Stockmen's Livestock Mkt., Inc.*, 135 F.3d at 1243; *HBE Corp.*, 135 F.3d 554; *Meisner*, 133 F.3d at 656; *Hathaway*, 132 F.3d at 1220; *Ryther*, 108 F.3d at 844. Consequently, there is no other ground for overruling the trial court's denial of the Board Members' post-trial motion for JAML.[6]

### D. Combined Retaliation Instruction

The Board Members' second ground for appeal is that the trial court erred in submitting both Cross's state and federal retaliation claims in a combined instruction. As we held above, this issue can be reviewed only for plain error, because the Board

---

[6]Furthermore, in light of this court's determination of the applicable standard for employer liability and the nature of the record below, it was not an abuse of discretion for the trial court to deny the Board Members' alternative motion for a new trial on the ground that the verdict was against the weight of the evidence, *see Keeper*, 130 F.3d at 1314; *Schultz*, 105 F.3d at 1259, where that alternative motion was also based on an alleged failure to adduce any evidence meeting the "knew or should have known" requirement.

29

Members failed to make adequate, timely objections to the joint verdict director before the instructions were submitted to the jury.

On appeal, the Board Members assert that it was error to submit the MHRA retaliation claim on the basis of the same elements as the Title VII retaliation claim, because the MHRA contains much broader language than the comparable provisions of Title VII, citing *Williamson v. Arvin Indus., Inc.*, 975 F. Supp. 1235 (E.D. Mo. 1997), and because the Missouri Supreme Court held in *Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622 (Mo. 1995) (*en banc*), that "the difference in the language employed by the two statutes is sufficiently stark to render interpretations of the federal law inapposite for purposes of assigning meaning to section 213.070 [of the MHRA]." *Keeney*, 911 S.W.2d at 624. Cross counters that the MHRA is "broader" in respects that do not matter here and that the elements of the two retaliation claims, in this case, were indeed identical.

### 1. Retaliation under Missouri law

The portion of the MHRA prohibiting retaliation, codified at MO. REV. STAT. § 213.070(2), makes it "an unlawful discriminatory practice" "[t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." The Missouri Supreme Court recently discussed this statute in *Keeney*, 911 S.W.2d at 622.

In *Keeney*, the Missouri Supreme Court was asked, first, to consider whether a former employee is a "person" under § 213.070(2). *Keeney*, 911 S.W.2d at 622. The employer argued that the Missouri statute must be read in a manner consistent with federal law, and hence could only protect a person who is an employee of the company

charged with retaliation. *Id.* at 624. Comparing the language of the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a),[7] with the language of the MHRA, the Missouri Supreme Court wrote,

> It is immediately obvious that the language employed by Congress in 42 U.S.C. § 2000e-3(a) is considerably more limited than the exceedingly broad "in any manner against any other person" language adopted by the Missouri legislature in section 213.070. Indeed, the difference in the language employed by the two statutes is sufficiently stark to render judicial interpretations of the federal law inapposite for purposes of assigning meaning to section 213.070.
>    The language of section 213.070(2) is clear and unambiguous. The statute renders retaliation "in any manner against any other person" an unlawful discriminatory practice.

*Keeney*, 911 S.W.2d at 624. Consequently, the Missouri court held that the trial court's conclusion that the plaintiff could not prevail on his MHRA retaliation claim, because no employer-employee relationship existed between the plaintiff and the defendant, was erroneous. *Id.* at 625.

More to the point here, however, is the Missouri Supreme Court's comparison of the elements of a retaliation claim under the MHRA with those of such a claim under

---

[7]The federal provision states,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Title VII.  The Missouri court held that the trial court had "erroneously impose[d] federal interpretations of 42 U.S.C. § 2000e-3(a) on section 213.070," because the trial court had ruled that the plaintiff's evidence "d[id] not demonstrate that the alleged retaliatory action had any impact on Plaintiff's future employment or employability." *Keeney*, 911 S.W.2d at 625. The Missouri Supreme Court rejected the intimation in *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir. 1994), that 42 U.S.C. § 2000e-3(a) and § 213.070 are identical in scope and purpose. *Keeney*, 911 S.W.2d at 625 n.1. Instead, the Missouri court compared the elements of a retaliation claim under the two statutes as follows:

> Federal judicial interpretations of 42 U.S.C. § 2000e-3(a) require (1) that the employee engaged in an activity protected by the statute, (2) that adverse employment action occurred, and (3) that a causal connection existed between the two. *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir. 1994).  An adverse employment action occurs where a former employee suing for retaliation, demonstrates that the retaliatory action adversely affects his/her future employment or employability. *Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir. 1988); *Pantchenko v. C. B. Dolge Co., Inc.*, 581 F.2d 1052, 1053 (2d Cir. 1978).
>
> Under section 213.070, retaliation must be given broader meaning; this is because section 213.070 does not limit itself to the employer-employee relationship.  Thus, retaliation exists under section 213.070 when (1) a person files a complaint, testifies, assists or participates in an investigation, proceeding or hearing conducted pursuant to chapter 213 and (2) as a direct result, he or she suffers any damages due to an act of reprisal. This Court cannot judicially impose a requirement outside of the plain language in section 213.070. Here, the trial court applied the wrong legal standard for determining if retaliation occurred under that section.

*Keeney*, 911 S.W.2d at 625-26.

### 2.    *Cross's state-law retaliation claim*

However, in this case, there is no dispute that Cross was an employee of the Board at the time she alleges she was retaliated against, not a former employee, so the broader scope of the MHRA anti-retaliation provision, as compared to the Title VII provision, is not called into play. *See Keeney*, 911 S.W.2d at 625-26.   Of the pertinent elements, we can perceive no effective difference in this case between proof that "the employee engaged in an activity protected by the statute," the first element of a Title VII retaliation claim, and proof that a current employee "file[d] a complaint, testifie[d], assist[ed] or participate[d] in an investigation, proceeding or hearing conducted pursuant to chapter 213," the first element of a retaliation claim under the MHRA.   Nor can we see any effective difference between proof that there was a causal connection between the employee's protected activity and adverse employment action, the remaining elements of a Title VII retaliation claim, and proof that "as a direct result [of protected activity], [the employee] suffer[ed] any damages due to an act of reprisal," the second element of a retaliation claim under the MHRA.   In this case, we cannot find that the trial court committed any plain error in instructing on the two retaliation claims in a combined instruction stating elements drawn from Title VII cases.   *Westcott*, 133 F.3d at ___; *Dupre*, 112 F.3d at 334; *Ryther*, 108 F.3d at 847.

Furthermore, to the extent the Missouri statute would provide for relief in a broader set of circumstances, because the jury verdict here was rendered on the *narrower* statement of elements of a Title VII retaliation claim, there can be no doubt that the verdict was rendered on the Title VII claim, the claim permitted by the trial court here.   The Board Members' argument that there is confusion over the claim upon which the verdict was rendered, the state or federal one, could only have merit if the

33

verdict had been rendered on the *broader* elements, and the court had then stricken the *broader* claim, leaving in doubt whether the proof was adequate to sustain the *narrower* claim. Thus, there was no plain error in the combined instruction that seriously affected the fairness, integrity, or public reputation of the judicial proceedings or that would result in a miscarriage of justice if left uncorrected. *Westcott*, 133 F.3d at ___; *Dupre*, 112 F.3d at 334; *Ryther*, 108 F.3d at 847. Rather, the combined instruction fairly and adequately stated the applicable law, when read as a whole in the circumstances of this case, and the Board Members can demonstrate no prejudice from the combined instruction. *Stockmen's Livestock Mkt., Inc.*, 135 F.3d at 1245; *Dupre*, 112 F.3d at 335.

## III. CONCLUSION

We conclude that appellants failed to preserve either of the errors they assert on appeal. Having reviewed the trial court's rulings for "plain error," we hold, first, that where a supervisory employee with the power to hire, fire, demote, transfer, suspend, or investigate an employee is shown to have used that authority to retaliate for the filing of a charge of sexual harassment, the plaintiff need not also prove that the employer participated in or knew or should have known of the retaliatory conduct to hold the employer liable, and the trial court properly denied a post-trial motion for JAML or new trial based on the assertion that the "knew or should have known" standard had not be satisfied. Second, we hold that the trial court did not plainly err in giving a combined instruction on the plaintiff-appellee's retaliation claims under the MHRA and Title VII, because, in the circumstances of this case, the elements of the two claims were essentially identical. Finding no error, the judgment of the district court is affirmed.

34

A true copy.

Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT